STOW TEACHERS ASSOCIATION, APPELLANT *v.* STOW BOARD OF EDUCATION, APPELLEE.

(No. 9985—Decided June 17, 1981.)

*Mr. Ronald G. Macala,* for appellant.
*Mr. Dennis M. Whalen* and *Mr. G. Frederick Compton,* for appellee.

BELL, J. Appellant assigns error to the trial court's declaration of rights of the parties contestant under Article IX of the Stow City Schools Master Contract. We affirm.

At the end of the 1979-80 academic year a number of teachers voluntarily terminated their services with the Stow City System. The Stow Board of Education failed to hire replacements for all of those who left with the result that four fewer teachers were employed for the 1980-81 school year than were employed in 1979-80.

Appellant contended that such a disparity in teaching positions constituted a "reduction in force" as that phrase is used in Article IX of the Stow City School Master Contract and claimed the right to negotiate the implementation of such reduction. The board of education disagreed.

Appellant then filed an action for declaratory judgment; that action resulted in the trial court's ruling that the phrase "reduction in force" as used in Article IX did not encompass within its meaning the circumstances described

above. In brief, the trial court held that the phrase as employed in Article IX, had reference to those reductions in the number of teachers employed alluded to in R.C. 3319.17 which reductions were occasioned by suspension rather than attrition.

Appellant now contends:

"1. The trial court committed error in concluding that appellee was not contractually obligated to negotiate a reduction in force policy with appellate [*sic*] under Article IX of its collective bargaining agreement.

"2. The trial court committed error in concluding that appellee has no contractual obligation under Article IX of its collective bargaining agreement unless it first reduces its teaching force through suspension of contracts."

Article IX of the Stow City School Master Contract reads as follows:

"In the event that a reducation [*sic*] in force becomes necessary, the Stow Board of Education agrees to negotiate with the Stow Teachers Association the procedure to be used before implementation of the reduction in force occurs."

Definition of the phrase "reduction in force" as used is determinative of the issues before this court as it was below.

In interpreting the meaning of the terms of contracts such as that before us, it is appropriate to consider statutory provisions which have direct reference to the field of education. See *Rylke* v. *Portage Area School District* (1977), 473 Pa. 481, 375 A. 2d 692; *Madison Cty. Bd. of Edn.* v. *Wigley* (1972), 288 Ala. 202, 259 So. 2d 233. Absent contractual language to the contrary it may be assumed that when words or phrases utilized in a teaching contract incorporate terms given specific meaning by statute, the parties intended to give the statutory meaning to the contractual terms. See 17A Corpus Juris Secundum 300, Contracts, Section 330; 1 Restatement of Contracts 317, Section 234.

Thus, the words of R.C. 3319.17 bear directly on the question before us. The section states:

"When by reason of decreased enrollment of pupils, return to duty of regular teachers after leaves of absence, or by reason of suspension of schools or territorial changes affecting the district, a board of education decides that it will be necessary to reduce the number of teachers, it may make a reasonable reduction. In making such reduction, the board shall proceed to suspend contracts in accordance with the recommendation of the superintendent of schools who shall, within each teaching field affected, give preference to teachers on continuing contracts and to teachers who have greater seniority. Teachers, whose continuing contracts are suspended, shall have the right of restoration to continuing service status in the order of seniority of service in the district if and when teaching positions become vacant or are created for which any of such teachers are or become qualified."

Having read and considered the provisions of Article IX, we are of the opinion that the "reduction in force" referred to therein relates directly to the reduction in number of teachers spoken of in the statute, namely the reduction brought about by reason of the suspension of teaching contracts.

The wording of Article IX, we believe, confirms such a view. We note first that appellant's right to negotiate comes into play when a reduction in teaching positions becomes *necessary,* not when a reduction *occurs.* The statute in question plainly speaks to the question of a reasonable reduction in force necessitated by certain conditions, including decreased enrollment of children.

The contractual right of the association is one allowing negotiation concerning the procedure to be utilized in effectuating the reduction *before* the reduction occurs. This language seems clearly to be intended to safeguard the interests of association members in the event of

planned suspensions of teachers in the event circumstances necessitate such suspensions. We are not of the opinion that the voluntary retirement or resignation of one or more teachers because of the teacher's individual wish is such an action as would constitute a reduction in force as contemplated by Article IX thus triggering negotiation for implementation prior to the teachers leaving the system.

We hold that the "reduction in force" contemplated by Article IX of the Stow City Schools Master Contract is that reduction in force necessitated by circumstance and effectuated by the suspension of teaching contracts. We believe the clear meaning of Article IX to be that when circumstances exist whereby the board considers it necessary to reduce the teaching staff in a reasonable fashion, and where such reductions are to be effectuated by the suspension of teaching contracts, the provisions of Article IX are called into operation. Under such circumstances the association would have the right to negotiate with the board the procedure to be used in implementing the reduction in force prior to the reduction becoming effective.

The judgment is affirmed.

*Judgment affirmed.*

VICTOR, P.J., and MAHONEY, J., concur.